IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:

RAYDENE Y. CHRISTIAN,                             Case No.: 16-12266-LMI

      Debtor.                                             Chapter 7
_____/

**MULTIBANK 2009-1 RES-ADC VENTURE, LLC'S MOTION TO DISMISS
CHAPTER 7 CASE PURSUANT TO 11 U.S.C. § 707**

Creditor Multibank 2009-1 RES-ADC Venture, LLC ("Multibank") respectfully moves pursuant to 11 U.S.C. § 707 for an order dismissing the Chapter 7 case filed by Raydene Y. Christian (the "Debtor"), and in support states as follows:

**JURISDICTION**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are §§ 105(a) and 707 of the Bankruptcy Code and Bankruptcy Rules 1017, 9013 and 9014.

**BACKGROUND**

2. On February 16, 2016, the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida entered the Final Judgment in favor of Multibank and against the Debtor in the amount of $131,208.21.

3. On February 18, 2016, the Debtor filed a petition for relief under chapter 7 of the United States Bankruptcy Code.

{M1126966.1}

4. At the time of filing the bankruptcy petition, the Debtor's current monthly gross wages were $10,329.69, which equates to an annual salary of $123,956.28. *See* Schedule I Line 4 (ECF#1).[1] The Debtor lists monthly payroll deductions of $5,698.84, which includes $1,873.60 per month in "garnishment" deductions. *See* Schedule I Line 5h and 6 (ECF#1).

5. According to the Statement of Financial Affairs, the Debtor received $ 88,000.00 in income year for 2014 and $86,541.00 for income in 2013. *See* Statement of Financial Affairs, Question 4 (ECF#1). The Debtor did not list income for 2015. *See* Statement of Financial Affairs, Question 4 (ECF#1).

6. On the Debtor's Official Form 122A-1 Chapter 7 Statement of Your Current Monthly Income (ECF#4), the Debtor states that her debts are primarily consumer debts, that her gross wages per month are $9,787.64, that her annual income is $117,451.68 and, most importantly, that there is a presumption of abuse.

7. On the Debtor's Official Form 122A-2 Chapter 7 Means Test Calculation (ECF#5), the Debtor lists on Line 29 continuing educational expenses in the amount of $1,330.00.

8. On the Debtor's Official Form 122A-2 Chapter 7 Means Test Calculation (ECF#5), the Debtor lists on Line 31 continuing charitable contributions in the amount of $978.00 *per month*.

9. According to Schedule D (ECF#1), the Debtor lists two secured debts on two vehicles in the total amount of $42,455.00 and a first mortgage on the Debtor's primary residence in the amount of $126,735.00.

---

[1] The median family income for a family of three or more in Florida for chapter 7 cases filed on and after May 15, 2015 is $57,977.

10. According to Schedule F (ECF#1), the Debtor lists total unsecured debts of $164,507.21, including, *inter alia*, $2,768.00 in credit card debt to Capital One, $2,439.00 in credit card debt to Citi, $18,000 in student loans, and $131,208.21 in debt to Multibank.

**RELIEF REQUESTED**

**I.     Dismissal is Warranted Under 11 U.S.C. § 707(a)**

11. The Bankruptcy Code provides that a finding of bad faith is "cause" for dismissal pursuant to 11 U.S.C. §§ 707(a). *In re Piazza*, 719 F.3d 1253, 1262. (11th Cir. 2013). The Bankruptcy Code does not define "for cause," and the three enumerated examples in § 707(a) are illustrative, not exhaustive. *Id.* at 1261-62. The decision to dismiss a petition for lack of good faith rests within the sound discretion of the bankruptcy court. *Id.* at 1271. Bad faith does not lend itself to a strict formula. *Id.* at 1271, citing *Natural Land Corp. v. Baker Farms, Inc. (In re Natural Land Corp.),* 825 F.2d 296, 298 (11th Cir.1987) (noting "there is no particular test for determining whether a debtor has filed ... in good faith"); see also *Gen. TradingInc. v. Yale Materials Handling Corp.,* 119 F.3d 1485, 1501 (11th Cir.1997) (observing " 'bad faith' is not defined in the bankruptcy code," and "there is no legislative history addressing the intended meaning" of the term). Bad faith is instead a fact-intensive judgment that is "subject to judicial discretion under the circumstances of each case." *Id.* at 1271, citing *Albany Partners, Ltd.v. Westbrook (In re Albany Partners, Ltd.),* 749 F.2d 670, 674 (11th Cir.1984). In light of the discretionary nature in finding bad faith, a totality-of-the-circumstances approach is the correct legal standard for determining bad faith under § 707(a). *Id.*

12. The totality-of-the-circumstances inquiry looks for "atypical" conduct, that falls short of the "honest and forthright invocation of the [Bankruptcy] Code's protections," *Id.* citing *Kestell v. Kestell (In re Kestell),* 99 F.3d 146, 149 (4th Cir.1996). This approach finds bad faith

as being "'evidenced by the debtor's deliberate acts or omissions that constitute a misuse or abuse'" of chapter 7 bankruptcy. *Id.* (internal citations omitted). In making that determination, bankruptcy courts must, sift the circumstances surrounding [a] claim to see that injustice or unfairness is not done. *Id.* 1272.

13. In *In re Piazza*, the 11th Circuit analyzed bad faith under § 707(a) using the following list of factors:

> (i) the debtor reduced his creditors to a single creditor shortly before the petition date;
> (ii) the debtor made no life-style adjustments or continued living a lavish life-style;
> (iii) the debtor filed the case in response to a judgment, pending litigation, or collection action;
> (iv) there is an intent to avoid a large, single debt;
> (v) the debtor made no effort to repay her debts;
> (vi) the unfairness of the use of Chapter 7;
> (vii) the debtor has sufficient resources to pay her debts;
> (viii) the debtor is paying debts of insiders;
> (ix) the schedules inflate expenses to disguise financial well-being;
> (x) the debtor transferred assets;
> (xi) the debtor is over-utilizing the protections of the Bankruptcy Code to the unconscionable detriment of creditors;
> (xii) the debtor employed a deliberate and persistent pattern of evading a single major creditor;
> (xiii) the debtor failed to make candid and full disclosure;
> (xiv) the debtor's debts are modest in relation to his assets and income; and
> (xv) there are multiple bankruptcy filings or other procedural "gymnastics."

*In re Piazza* at 614-615 (internal citations omitted).

14. Based on these factors, cause exists to dismiss this case as a bad faith filing under § 707(a). In particular, factors (ii), (iii), (iv), (v), (vi), (vii), (xi), and (xiii) weigh heavily in favor of dismissal. As will be discussed, the Debtor filed this case to avoid a Multibank's potential collection activity, and she has the ability to repay her debts or at the very least a substantial

portion of her debts, has provided false and misleading statements in her bankruptcy schedules and other documents and under oath throughout this case.

15. Factor (xiii) supports a finding of bad faith as the Debtor has failed to make a candid and full disclosure. The Debtor has made misleading and inaccurate disclosures in her schedules, particularly that the "garnishment" listed on her Schedule I Line 5h (ECF#1) is a voluntary deduction of her income affecting her ability to repay creditors and that there is no presumption of abuse due to the means test based upon $1,330.00 per month in educational expenses on Line 29 of the Debtor's Official Form 122A-2 Chapter 7 Means Test Calculation (ECF#5).

16. "If the debtor has the ability to repay even a portion of his debts out of future income, she should not be in a Chapter 7." *In re Dorwarth*, 258 B.R. 293 (Bankr. S.D. Fla. 2001). If the Debtor's case were converted to Chapter 11 or Chapter 13, the Debtor would have sufficient income to repay creditors in full.

17. Factors (ii) and (v) support a finding of bad faith as the Debtor has made no effort to repay Multibank, instead filed bankruptcy immediately after the judgment was entered. At no point has the Debtor attempted to repay Multibank.

18. The Debtor filed bankruptcy to avoid the pending collection action of Multibank, supporting a finding of bad faith based upon Factors (iii) and (iv). It is undisputed that the Multibank is the Debtor's largest unsecured creditor and Debtor filed bankruptcy shortly after Multibank received a judgment against the Debtor. The Debtor filed bankruptcy to avoid the pending collection action of the Multibank's money judgment of $131,208.21, and the Debtor has made no assertion that any other significant creditor is attempting to collect from her. The other unsecured debts listed on the Debtor's schedules are credit card debts, all of which are

small in relation to the Multibank's money judgment, and minimal non-dischargeable student loan debt. Multibank's unsecured debt is $131,208.21 of Debtor's $164,507.21 unsecured debt.

19. In the event that the Debtor does not make such charitable contributions listed on Line 31, there would be further presumption of bad faith under *Piazza*. The Debtor's Schedule J Line 14(ECF#1) does not list any monthly charitable contributions and the Debtor's Statement of Financial Affairs Question 14 (ECF#1) states that the Debtor has not made any gifts or contributions with a total value of more than $600 within the last two years. As the Debtor's Schedule J (ECF#1), Statement of Financial Affairs (ECF#1) and Debtor's Official Form 122A-2 Chapter 7 Means Test Calculation (ECF#5) were all filed under penalty of perjury, Multibank is concurrently serving a request for production to the Debtor to determine if she actually makes such charitable contributions.

20. The Debtor is using the chapter 7 process unfairly, and is receiving the protections of the Bankruptcy Code to the unconscionable detriment of her creditors, supporting a finding of bad faith based upon Factors (vi), (vii) and (xi). The totality of the circumstances in this case clearly demonstrate the Debtor's abuse of the chapter 7 process. Here it would be unfair to allow someone like Debtor to benefit from bankruptcy protection when she has more the sufficient resources to repay creditors. Debtor can hardly be considered an honest but unfortunate debtor and allowing her to avail herself of bankruptcy protection would be unfair and unjust.

## II. Dismissal is Warranted Under 11 U.S.C. § 707(b)

21. In the alternative, Multibank seeks the dismissal of the Debtor's chapter 7 case pursuant to 11 U.S.C. § 707(b).

22. Section 707(b) of the Bankruptcy Code provides:

>(b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

23. "Before dismissing a case under § 707(b), a court must determine that the debtor has primarily consumer debts, and this determination hinges upon the reasons why the debts were incurred." *In re Piazza*, 451 B.R. 608, 612 (Bankr. S.D. Fla. 2011). Under 11 U.S.C. § 101(8), consumer debts are defined as those "debt[s] incurred by an individual primarily for a personal, family or household purpose." *Id.* Therefore, the threshold inquiry under § 707(b) is "whether more than 50% of the Debtor's debts were incurred 'primarily for a personal, family or household purpose." *Id.*

24. The Debtor's Summary of Schedules lists $169,190.00 in secured liabilities, no priority unsecured liabilities, and $164,507.21 in unsecured liabilities, for a total of $ 333,697.21 in liabilities.

25. The Debtor concedes that she has primarily consumer debts, and based upon the income information the Debtor has provided in her petition and schedules, she is an above-median debtor. Accordingly, the Debtor is subject to the means test.

26. First and most importantly, Line 29 of the Debtor's Official Form 122A-2 Chapter 7 Means Test Calculation (ECF#5) lists on Line 29 continuing educational expenses in the amount of $1,330.00, despite the fact that Line 29 clearly and unequivocally states that the

deduction for purposes of the means test shall be "(not more than $156.25* per child)." As the Debtor's Schedule J Line 2 (ECF#1) states that she has a twelve year old son, the Debtor is only entitled to one (1) $156.25 deduction. If the $1,173.75 that the Debtor has misapplied to the means test calculation is added to the total, the total deductions for means test purposes would be $8,863.49.

27. Therefore, the monthly disposable income would be $924.15, which multiplied by 60 (pursuant to Line 39d) for a total of $55,449.00. Pursuant to Debtor's Official Form 122A-2 Chapter 7 Means Test Calculation Line 40 (ECF#5), there would therefore be a *presumption of abuse*.

28. A review of Lines 41 and 42 demonstrate that the adjusted Line 39d, as described above, is more than 25% of the Debtor's unsecured debt ($164,507.21 time .25) or $41,126.80.

29. Further, the numbers may be exacerbated by the Debtor's claim of $978.00 per month in charitable contributions. While § 707(b) states that a court may not take into consideration whether a debtor has made, or continues to make, charitable contributions, Multibank is currently investigating the Debtor's claim that she donates $978.00 per month to charity. In the event that the Debtor does not make such charitable contributions, there would be further presumption of abuse of the means test by the Debtor. The Debtor's Schedule J Line 14(ECF#1) does not list any monthly charitable contributions and the Debtor's Statement of Financial Affairs Question 14 (ECF#1) states that the Debtor has not made any gifts or contributions with a total value of more than $600 within the last two years. As the Debtor's Schedule J (ECF#1), Statement of Financial Affairs (ECF#1) and Debtor's Official Form 122A-2 Chapter 7 Means Test Calculation (ECF#5) were all filed under penalty of perjury, Multibank

is concurrently serving a request for production to the Debtor to determine if she actually makes such charitable contributions.

30. Further, after the enactment of BAPCPA, even if there is no presumption of abuse under §707(b)(2), § 707(b)(3) warrants dismissal based upon "abuse" in cases where a debtor filed a chapter 7 petition in bad faith *or* the totality of the circumstances of the debtor's financial situation demonstrates abuse.  "[I]f the debtor has the ability to repay even a portion of his debts out of future income, he should not be in a Chapter 7.  *In re Dorwarth*, 258 B.R. 293 (Bankr. S.D. Fla. 2001)." *In re Leung*, 311 B.R. 626, 631 (Bankr. S.D. Fla. 2004).

31. Based on her Schedule I and J (ECF#1), the Debtor would be able to pay her creditors in full, or make a substantial distribution to creditors, through a Chapter 13 plan if the Debtor (correctly) removed the "garnishment" payments from her Schedule I Line 5h (ECF#1) calculation of ***voluntary*** payroll deductions.  This is in addition to the $853.40 the Debtor is paying per month to her ***voluntary*** tax exempt annuity as listed on Schedule I Line 5h (ECF#1).

32. In this case, it is clear that the Debtor has not come to this Court in good faith. The Debtor has significant income and the ability to repay all or a substantial portion of her debt, yet is requesting that the Court relieve him of the burden of his obligations so that she can continue to maintain a lavish lifestyle.  Chapter 7 was not intended to be used for this purpose.

33. Dismissal of this case, with prejudice, is required to preserve the integrity of the bankruptcy process.   Accordingly, Multibank requests that the Court dismiss the Debtor's case with a two year bar against the Debtor filing another bankruptcy case, and a bar against the

discharge of the Debtor's debts existing on the petition date in any subsequent case the Debtor may file.[2]

WHEREFORE, Multibank 2009-1 RES-ADC Venture, LLC respectfully requests that the Court enter an order dismissing the Debtor's chapter 7 case with prejudice, and awarding such further relief as deemed just and proper.

Dated:  March 2, 2016

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

JONES WALKER LLP
*Attorneys for Multibank 2009-1 RES-ADC Venture, LLC*
201 Biscayne Blvd., Suite 2600
Miami, Florida 33131
Email:  bturner@joneswalker.com
Telephone:  (305) 679-5700
Facsimile:  (305) 679-5710

By:   */s/ Barry Turner*
      Barry S. Turner, Esq.
      Florida Bar No. 85535

---

[2] "Section 349(a) allows a bankruptcy court to bar, in any subsequent case filed by a debtor, the discharge of the debts that were dischargeable in a dismissed case if cause exists." *In re Kollar*, 357 B.R. 657, 662 (Bankr. M.D. Fla. 2006).

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 2, 2016, I electronically filed the foregoing motion with the Clerk of the Court using CM/ECF. I also certify that the foregoing motion is being served this day on all counsel of record and/or pro se parties identified on the Service List attached to the original hereof, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

**ECF:**
- Diego Mendez    info@mendezlawoffices.com, ana.solano@mendezlawoffices.com;mlolawbestcase@gmail.com
- Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov
- Maria Yip    trustee@yipcpa.com, myip@ecf.epiqsystems.com

**US Mail:**

Diego Mendez, Esq.
POB 228630
Miami, FL 33172
    *Attorney for Debtor*

U.S. Trustee
Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130

                        By:   */s/ Barry Turner*
                              Barry S. Turner, Esq.