UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:

RAYDENE Y. CHRISTIAN,                           Case No.: 16-12266-LMI

Debtor.                                          Chapter 7
_____/

**MULTIBANK 2009-1 RES-ADC VENTURE, LLC'S OBJECTION TO CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN AND MOTION TO DISMISS CHAPTER 13 CASE**

Creditor, Multibank 2009-1 RES-ADC Venture, LLC ("Multibank") objects to the confirmation of Raydene Y. Christian's (the "Debtor") Chapter 13 Plan (ECF#28) and requests dismissal of this Chapter 13 case. In support, Multibank states as follows:

**Background**

1. On February 16, 2016, the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida entered the Final Judgment in favor of Multibank and against the Debtor in the amount of $131,208.21.

2. On February 18, 2016, the Debtor filed her petition for relief under Chapter 7 of the United States Bankruptcy Code.

3. At the time of filing the bankruptcy petition, the Debtor's gross monthly wages were $10,329.69, which equates to an annual salary of $123,956.28. *See* Schedule I Line 4 (ECF#1). The Debtor lists monthly payroll deductions of $5,698.84, which includes $1,873.60 per month in "garnishment" deductions. *See* Schedule I Line 5h and 6 (ECF#1).

4. According to Schedule F (ECF#1), the Debtor lists total unsecured debts of $164,507.21, including, *inter alia*, $2,768.00 in credit card debt to Capital One, $2,439.00 in credit card debt to Citi, $18,000 in student loans, and $131,208.21 in debt to Multibank.

{M1147867.1}

5.      On March 2, 2013, Multibank filed the Limited Objection to Exemptions seeking a ruling from the Court that the Debtor's Bank Accounts (as defined in the Motion) were non-exempt property of the estate.

6.      On March 8, 2016, the Court entered the Agreed Order Granting, In Part, and Denying, In Part, Motion to Dismiss Pursuant to 11 U.S.C. Section 707(b)(1) arising under 11 U.S.C. Section 707(b)(2) and under 11 U.S.C. Section 707(b)(3) (ECF#21), converting the Debtor's case to Chapter 13.

7.      On March 9, 2016, Multibank filed Proof of Claim No. 1-1 in the amount of $131,242.35.

8.      On March 15, 2016, the Debtor filed her Chapter 13 Plan (ECF#28) (the "Plan"). Despite the Debtor making in excess of $10,329.69 per month, the Plan proposes to make 36 monthly payment of $200.00 per month. Of the total $7,200.00 paid pursuant to the Plan, attorney's fees account for $2,725.00.

### The Plan Fails the Liquidation Test and Fails to Commit All of the Debtor's Projected Disposable Income and Violates

9.      Multibank objects to confirmation pursuant to 11 U.S.C. § 1325(a)(4) and (b)(1) as the statutes provide that a Chapter 13 plan cannot be confirmed unless it satisfies what is known as the "best interest of creditors test" and "liquidation test." *In re Brown*, 402 B.R. 384 (Bankr. M.D. Fla. 2008). Section 1325(a)(4) provides:

> (a) Except as provided in subsection (b), the court shall confirm a plan if—
> …
> (4) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of Debtor were liquidated under chapter 7 of this title on such date.

{M1147867.1}

10. The Plan fails the liquidation test and best interest of creditors test pursuant to 11 U.S.C. § 1325(b)(1). First, the Plan does not propose to pay unsecured creditors 100% of their claims.

11. Second, the Plan proposes to pay unsecured creditors a total of $3,755.04. The Debtor's non-exempt Bank Accounts are valued by the Debtor in the amount of $4,696.73. Based upon the value of Debtor's assets, including the Bank Accounts, Multibank would receive more in a liquidation than through the proposed Plan.

12. Accordingly, the Plan violates § 1325(a)(4) and cannot be confirmed.

13. Section 1325(b) mandates that "debtors pay either 100 percent of the unsecured claims against the estate or use all of their disposable income to fund the plan." *In re Humphrey*, 165 B.R. 508, 510 (Bankr. M.D.Fla. 1994). In relevant part, the statute states:

> (b)
> (1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
> (2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—
> (A)

{M1147867.1}

> (i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed;

14. The Debtor is not committing her full disposable income to fund the Plan. The Debtor's has additional non-exempt disposable income including, but not limited to, the following:

- **"Garnishment":** The Debtor asserts that her $10,329.69 per month income is subject to $1,873.60 per month in "garnishment" deductions. However, on January 19, 2016, CACH, LLC filed the Notice of Filing and Satisfaction of Judgment in Garnishment. Attached hereto as **Composite Exhibit 1** are true and correct copies of the Notice of Filing and Satisfaction of Judgment in Garnishment. Further, a creditor who has initiated garnishment proceedings against the wages of a debtor has an affirmative duty to stop the garnishment and a creditor can satisfy its duty to comply with the automatic stay by dismissing the garnishment or by staying it. *In re Hernandez*, 2009 WL 3378495 at *3 (Bankr. S.D. Fla. 2009) (citations omitted). If the "garnishment" was removed from Schedule I (ECF#1), the Debtor has disposable income in the amount of $1,562.84 per month.

- **Luxuries:** In addition to removal of the "garnishment," the Debtor's luxuries[1] were removed from Schedule J (ECF#1), the Debtor would have additional funds to pay unsecured creditors in full with interest.

---

[1] Luxuries included on the Debtor's Schedule J (ECF#1) include, but are not limited to, $51.42 for the "Cafeteria," $450.00 per month for "Telephone, cell phone, Internet, satellite, and

{M1147867.1}

- **Private School:** Further, the Debtor may not, by statute, deduct more than $160.42 per month for private school. For an above median debtor, such as the Debtor, the annual limit for the deduction is set in 11 U.S.C. § 707(b)(2)(A)(ii)(IV), which is integrated into the definition of disposable Chapter 13 income in chapter 13 through §1325(b)(3), which provides that "Amounts reasonably necessary to be expended under paragraph (2) [of §1325(b)], other than subparagraph (A)(ii) of paragraph (2) [of §1325(b)], shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has a current monthly income, when multiplied by 12, greater than- . . . (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median income of the applicable State for a family of the same number or fewer individuals." Accordingly, the Debtor's expenses on her Schedule I (ECF#1) for private school tuition should be reduced to $160.42, leaving additional disposable income in the amount of $906.25 for creditors.

- **403(b) Retirement Account:** In addition to above, not all of the "involuntary deductions" are in fact involuntary. The Debtor's Schedule I (ECF#1) Line 5h states that the Debtor is making $489.36 per month to her "403(b)" retirement plan. Although there is a split of authority, the better reasoned case law holds that these voluntary contributions are not deductible from the Debtor's disposable income and must therefore be included in the calculation of "projected disposable income" available for the repayment of creditors. *See In re Seafort*, 669 F.3d 662

---

cable services," $346.00 for non-car payments, and payments for two (2) automobiles despite the fact that there is only one (1) driver in her home.

(6th Cir. 2012) (holding that Chapter 13 debtors could not continue to make voluntary retirement contributions in the same amount as their 401(k) loan repayments after repayment of the loan); *In re Parks*, 475 B.R. 703 (9th Cir. BAP 2012) (holding that Chapter 13 debtors cannot make post-petition voluntary retirement contributions in any amount); *In re McCullers*, 451 B.R. 498 (Bankr. N.D. Cal. 2011) (same); and *In re Prigge*, 441 B.R. 667 (Bankr. D. Mont. 2010) (same); *but see Baxter v. Johnson (In re Johnson)*, 346 B.R. 256, 263 (Bankr. S.D. Ga. 2006); *In re Garrett*, 2008 WL 6049236 (Bankr. M.D. Fla.)

15. If the Debtor included such non-exempt disposable income in her Plan, unsecured creditors would be paid in full with interest.

16. Accordingly, the Plan fails to meet the confirmation standards of Section 1325, which includes § 1325(b)(1)(B)'s disposable income test and § 1325(a)(4)'s best interests of creditors test.

## The Plan Was Proposed In Bad Faith

17. Pursuant to 11 U.S.C. §§ 1325(a)(3) and (7), the filing of the Plan and bankruptcy petition was not done in good faith. "In conducting the good faith inquiry, the totality of the circumstances must be considered." *In re Humphrey*, 165 B.R. 508, 510–11 (Bankr.M.D.Fla.1994). The Eleventh Circuit has approved a non-exclusive list of factors for determining good faith:

    1. the amount of Debtor's income from all sources;
    2. the living expenses of Debtor and his dependents;
    3. the amount of attorney's fees;
    4. the probable or expected duration of Debtor's chapter 13 plan
    5. the motivations of Debtor and his sincerity in seeking relief under the provisions of chapter 13;
    6. Debtor's degree of effort;

>   7. Debtor's ability to earn and the likelihood of fluctuation of his earnings;
>   8. special circumstances such as inordinate medical expense;
>   9. the frequency with which Debtor has sought bankruptcy protection;
>   10. the circumstances under which Debtor has contracted his debts and has demonstrated bona fides, or lack of same, in dealings with his creditors;
>   11. the burden which the plan's administration would place on the trustee;
>   12. any exceptional circumstances in the case;
>   13. the type of debt and whether it would be nondischargeable in chapter 7;
>   14. accuracy of the plan's statements of debts and expenses and whether any inaccuracies are an attempt to mislead the court....

Id. at 511 (quoting *In re Kitchens*, 702 F.2d 885, 888 (11th Cir.1983)).

18. The Plan fails to meet the good faith requirements of 11 U.S.C. §1325.

19. Factor (xiii) supports a finding of bad faith as the Debtor has failed to make a candid and full disclosure. The Debtor has made misleading and inaccurate disclosures in her schedules, particularly that the "garnishment" listed on her Schedule I Line 5h (ECF#1).

20. Factors (ii) and (v) support a finding of bad faith as the Debtor has made no effort to repay Multibank, instead filed bankruptcy immediately after the judgment was entered.

21. The Debtor filed bankruptcy to avoid the pending collection action of Multibank, supporting a finding of bad faith based upon Factors (iii) and (iv). It is undisputed that the Multibank is the Debtor's largest unsecured creditor and Debtor filed bankruptcy shortly after Multibank received a judgment against the Debtor. The Debtor filed bankruptcy to avoid the pending collection action of the Multibank's money judgment of $131,208.21, and the Debtor has made no assertion that any other significant creditor is attempting to collect from her. The other unsecured debts listed on the Debtor's schedules are credit card debts, all of which are small in relation to the Multibank's money judgment, and minimal non-dischargeable student loan debt. Multibank's unsecured debt is $131,208.21 of Debtor's $164,507.21 unsecured debt.

{M1147867.1}

22. All of the above factors demonstrate Debtor is retaining significant assets, which are indisputably luxuries including a rental property, daily lunches out at work, transportation in addition to their vehicles, without making any meaningful distribution to unsecured creditors cannot satisfy the good faith requirements of 11 U.S.C. §1325.

23. The Debtor seeks to keep their luxuries while discharging their liability to Multibank, which appears to be her largest unsecured debt.

24. The Debtor's income would significantly increase without such luxuries, and could pay creditors over $2,000.00 per month, thereby paying unsecured creditors in full of the life of the Plan.

## Motion to Dismiss

25. Pursuant to 11 U.S.C. § 1307, Multibank requests that the Debtor's Chapter 13 case be dismissed.

26. Section 1307(c) Section 1307(c) provides that upon request of a party in interest or the United States Trustee, a court may dismiss a chapter 13 for cause and sets forth a non-exclusive list of examples. Although it is not specifically listed as an example, lack of good faith in filing a bankruptcy petition constitutes cause for dismissal under § 1307(c). *In re McGovern*, 297 B.R. 650, 655–56 (S.D.Fla.2003)(stating "that the filing of a chapter 13 petition in bad faith may constitute cause for dismissal under 11 U.S.C. § 1307(c)") (citations omitted); *In re Farber*, 355 B.R. 362, 366 (Bankr. S.D. Fla. 2006); *In re Haning*, 252 B.R. 799, 807 (Bankr.M.D.Fla.2000); *In re Fretwell*, 281 B.R. 745, 749-50 (Bankr. M.D. Fla. 2002). A motion to dismiss for lack of good faith is measured by the same standard (*Kitchens supra*) for determining good faith at confirmation. *Farber*, 355 B.R. at 366; *Fretwell*, 281 B.R. at 749-50 (citations omitted).

27. As stated above, factors ii, iii, iv, v, and xiii support dismissal of this Chapter 13 case. The Debtor has failed and/or refused to make a candid and full disclosure to the Court, particularly with the "garnishment" listed on her Schedule I Line 5h (ECF#1) and has failed to make a genuine effort to repay her creditors, including Multibank. At each and every turn during this case, the Debtor has failed and refused to make an honest disclosure.

28. Multibank and the U.S. Trustee has been forced to follow the Debtor's actions/inactions including filing the Multibank's Motion to Dismiss Case Pursuant to 11 USC 707(b) (ECF#11), the Limited Objection to Exemptions (ECF#12), the U.S. Trustee's Multibank's Motion to Dismiss Case Pursuant to 11 USC 707(b) (ECF#20) and the Motion to Compel Amendment of Schedule I (ECF#1) and to File Form 122C-2 (ECF#35) in order for the Debtor to comply with the Bankruptcy Code. The Debtor's actions in this Chapter 13 case, on their face, demonstrate her lack of good faith and fair dealing with the Court, the Ch. 13 Trustee, the U.S. Trustee and Multibank.

29. As of the filing of this objection, the Debtor has had ample opportunity to make a full and honest disclosure and fully comply with the Bankruptcy Code. Instead of fulfilling her responsibilities, the Debtor has played games with her schedules, plan and other pleadings. Multibank should not have to expend additional time and costs chasing the Debtor to comply with the Bankruptcy Code.

30. Accordingly, Multibank respectfully requests that the Court dismiss the Debtor's Chapter 13 case.

## Conclusion

31. The Debtor has ignored the requirements of a chapter 13 Plan, and appears to have filed this petition in bad faith in the hopes of stalling the post judgment remedies of

{M1147867.1}

Multibank, rather than having any actual intent to reorganize. Accordingly, Multibank requests that the Court sustain the objection to the Plan and dismiss the Debtor's bankruptcy case.

32. The deficiencies in Debtor's Plan set forth in this objection are intended to be non-exhaustive. Multibank reserves the right to raise additional objections to the Plan at or prior to the confirmation hearing.

WHEREFORE, Multibank 2009-1 RES-ADC Venture, LLC requests the entry of an Order (1) denying confirmation of the Plan; (2) dismissing this Chapter 13 case; and (3) granting such other and further relief as is just and appropriate.

| | |
|---|---|
| Dated: April 11, 2016 | I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).<br><br>JONES WALKER LLP<br>*Attorneys for Multibank 2009-1 RES-ADC Venture, LLC*<br>201 Biscayne Blvd., Suite 2600<br>Miami, Florida 33131<br>Email: bturner@joneswalker.com<br>Telephone: (305) 679-5700<br>Facsimile: (305) 679-5710<br><br>By:   /s/ Barry Turner<br>      Barry S. Turner, Esq.<br>      Florida Bar No. 85535 |

{M1147867.1}

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all parties receiving service via ECF, including those listed below, on April 11, 2016.

ECF:
- Diego Mendez    info@mendezlawoffices.com, ana.solano@mendezlawoffices.com;mlolawbestcase@gmail.com
- Nancy K. Neidich    e2c8f01@ch13herkert.com, ecf2@ch13herkert.com
- Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov
- Steven G. Powrozek    spowrozek@logs.com, electronicbankruptcynotices@logs.com
- Ariel Rodriguez    ariel.rodriguez@usdoj.gov
- Barry Seth Turner    bturner@joneswalker.com, mvelapoldi@joneswalker.com;tsnow@joneswalker.com

By:   */s/ Barry Turner*
Barry S. Turner, Esq.

{M1147867.1}

# Composite Exhibit 1

{Exhibit.1}

IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CACH, LLC

    Plaintiff/Judgment Creditor,

vs.

CASE NO.: 2014-10499-CC-05

RAYDENE CHRISTIAN
    Defendant/Judgment Debtor,

BAPTIST HOSPITAL OF MIAMI, INC.
    Garnishee.

_____/

## NOTICE OF FILING

    COMES NOW, Plaintiff, CACH, LLC, who does hereby notify this Honorable Court, Defendant, and Garnishee that as of this date listed below it has filed the Satisfaction of Judgment in Garnishment.

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished via regular U.S. Mail to Defendant, RAYDENE CHRISTIAN at 8665 NW 2nd Ter, Miami, FL 33126 and via regular U.S. Mail to Garnishee, BAPTIST HOSPITAL OF MIAMI, INC. at 1500 San Remo Ave Ste 300 Coral Gables, FL 33143.

Dated: January 19, 2016

    /s Jeremy A. Soffler, Esq.
    Bryan Manno, Esq.-0414573
    Jeremy A. Soffler, Esq. -92059
    Tina D. Gayle, Esq. -0636606
    FEDERATED LAW GROUP, PLLC
    13205 U.S. Highway 1, Suite 555
    Juno Beach, Florida 33408
    Tel: (888) 362-7684
    Fax: (800) 391-2178
    Document service e-mail:
    bmanno@federatedlaw.com

IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CACH, LLC
    Plaintiff/Judgment Creditor,

vs.                                                                 CASE NO.: 2014-10499-CC-05

RAYDENE CHRISTIAN
    Defendant/Judgment Debtor,

BAPTIST HOSPITAL OF MIAMI, INC.
    Garnishee.
_____/

## SATISFACTION OF JUDGMENT IN GARNISHMENT

    KNOW ALL MEN BY THESE PRESENTS: That Plaintiff, CACH, LLC, does hereby acknowledge payment in full. The Continuing Final Garnishment Judgment entered in this cause on June 21, 2015 is hereby satisfied of record.

WITNESS my hand and seal this 19th day of January, 2016.

                                                    Jeremy A. Soffler, Esq.
                                                    FEDERATED LAW GROUP, PLLC
                                                    13205 U.S. Highway 1, Suite 555
                                                    Juno Beach, Florida 33408
                                                    Tel: (888) 362-7684
                                                    Fax: (800) 391-2178
                                                    Email: bmanno@federatedlaw.com
                                                    Florida Bar No.: 92059

STATE OF FLORIDA             )
COUNTY OF PALM BEACH  )

Before me, the undersigned authority duly authorized to administer oaths, personally appeared Jeremy A. Soffler, to me personally known, and who stated to me that he executed the foregoing SATISFACTION OF JUDGMENT IN GARNISHMENT for the purposes contained therein.

WITNESS my hand and seal in the County and State last aforesaid this 19th day of January, 2016.

My Commission Expires:

                                                                           NOTARY PUBLIC

AMBER STENNES
MY COMMISSION # FF 221934
EXPIRES: April 16, 2019