**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

IN RE:

RAYDENE Y. CHRISTIAN,                                    Case No.: 16-12266-LMI

              Debtor.                                    Chapter 13

_____/

**MULTIBANK 2009-1 RES-ADC VENTURE, LLC'S OBJECTION TO CONFIRMATION**
**OF DEBTOR'S AMENDED CHAPTER 13 PLAN**

      Creditor, Multibank 2009-1 RES-ADC Venture, LLC ("Multibank") objects to the confirmation of Raydene Y. Christian's (the "Debtor") Amended Chapter 13 Plan (ECF#64) and requests dismissal of this Chapter 13 case.  In support, Multibank states as follows:

**Background**

      1.      On February 16, 2016, the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida entered the Final Judgment in favor of Multibank and against the Debtor in the amount of $131,208.21.

      2.      On February 18, 2016, the Debtor filed her petition for relief under Chapter 7 of the United States Bankruptcy Code.

      3.      At the time of filing the bankruptcy petition, the Debtor's gross monthly wages were $10,329.69, which equates to an annual salary of $123,956.28. *See* Schedule I Line 4 (ECF#1).  The Debtor lists monthly payroll deductions of $5,698.84, which includes $1,873.60 per month in "garnishment" deductions.  *See* Schedule I Line 5h and 6 (ECF#1).

      4.      According to Schedule F (ECF#1), the Debtor lists total unsecured debts of $164,507.21, including, *inter alia*, $2,768.00 in credit card debt to Capital One, $2,439.00 in credit card debt to Citi, $18,000 in student loans, and $131,208.21 in debt to Multibank.

5.      Schedule J (ECF#1) lists one dependent, the Debtor's son age 12, two cars totaling monthly payments in the amount of $786.49 per month, and private school tuition in the amount of $1,066.67 per month leaving monthly net income in the amount of ***negative*** $310.76.

6.      On March 2, 2013, Multibank filed the Limited Objection to Exemptions seeking a ruling from the Court that the Debtor's Bank Accounts (as defined in the Motion) were non-exempt property of the estate.

7.      On March 8, 2016, the Court entered the Agreed Order Granting, In Part, and Denying, In Part, Motion to Dismiss Pursuant to 11 U.S.C. Section 707(b)(1) arising under 11 U.S.C. Section 707(b)(2) and under 11 U.S.C. Section 707(b)(3) (ECF#21), converting the Debtor's case to Chapter 13.

8.      On March 9, 2016, Multibank filed Proof of Claim No. 1-1 in the amount of $131,242.35.

9.      On  March 15, 2016, the Debtor filed her Chapter 13 Plan (ECF#28).

10.      On April 25, 2016, the Ch. 13 Trustee filed her Objection to Exemptions and Certificate of Service of Notice of Hearing (ECF#51) objecting to the Debtor's head of household exemption and the valuations listed on the Debtor's Petition (ECF#1).

11.      On May 2, 2016, the Debtor filed her Amended Schedules I & J (ECF#53).  The Debtor now lists monthly gross wages in the amount of $8,038.75, which equates to an annual salary of $96,465.00.   The Debtor lists monthly payroll deductions of $3,020.96 including $489.36 per month in 403(b) contributions and $51.42 in "Cafeteria" charges. *See* Amended Schedules I (ECF#53) Line 5h.

12.      The Debtor now claims three dependents- her twelve year old son, her month and father. *See* Amended Schedule J (ECF#53) Line 2.    The Debtor's ongoing monthly expenses

increased from her Schedule J (ECF#1) to her Amended Schedule J (ECF#53) including: (1) the Debtor's food and housekeep supplies increased from $539.00 per month to $800.00 per month; (2) the Debtor's Medical and dental expenses increased from $50.00 per month to $143.00 per month; (3) the Debtor's Charitable contributions and religious donations increased from $0.00 to $900.00 per month.   While the Amended Schedule J (ECF#53) does not list private school tuition in the amount of $1,066.67, the Amended Schedule J (ECF#53) lists **_negative_** monthly income of $60.61.  The Debtor still claims two vehicles and two vehicle payments in the total amount of $786.49 on her Amended Schedule J (ECF#53).

13.     On May 3, 2016, the Debtor filed her Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period for 5 Years Form 122C-1 (ECF#56) ("Amended Form 122C-1") listing income in the amount of $8,038.75.

14.     On  May 16, 2016, the Debtor filed her Amended Chapter 13 Plan (ECF#64) ("Plan").  The Plan provides for payment of $200.00 per month for months 1-16 and $340.00 per month for months 17-60.  The Plan provides that the payments for the 2016 Nissan Rogue S will be paid outside the Plan and, by omission, implies that the payments for the 2013 Chevrolet Equinox LT will be paid within the Plan.

15.     On May 17, 2016, the Debtor filed her Amended Schedules I & J (ECF#65).  The Debtor lists monthly gross wages in the amount of $8,038.75, which equates to an annual salary of $96,465.00.  The Debtor lists monthly payroll deductions of $3,020.96 including $489.36 per month in 403(b) contributions and $51.42 in "Cafeteria" charges. *See* Amended Schedules I (ECF#65) Line 5h.   The Debtor now, for the first time, lists "Family Member Contribution to Car Drive by Family Member" in the amount of $314.00 per month. *See* Amended Schedules I (ECF#65) Line 9.

16.    The Debtor's ongoing monthly expenses changed again from her Amended Schedule J (ECF#53)  to her Amended Schedule J (ECF#65) including: (1) the Debtor's food and housekeep supplies decreased from $800.00 per month to $750.00 per month; (2) the Debtor's childcare and children's education costs increased from $0.00 per month to $162.00 per month; (3) the Debtor's personal care products and services from $100.00 to $50.00 per month. While the Amended Schedule J (ECF#65) does not list private school tuition in the amount of $1,066.67, the Amended Schedule J (ECF#65) lists monthly income of $241.39.

17.    On May 24, 2016, the Ch. 13 Trustee filed the Notice of Deficiency for Confirmation and Recommendation (ECF#69) stating:

> **Debtor failed to provide/file: a) did not file B22C-2 dismissal pursuant to 521 necessary, b) income of all adults not provided on B22C-1, c) WDO or motion to waive, d) explain withdrawal from Acct 4541 on 12/28/15 of $3000, 1/7 of $2500, e) explain $2000 purchase at Home depot, f) debtor is transferring large sums of money to bank accounts not disclosed on Sch B (#8354, #0362, and #2218) who is the owner of these accounts, g) Bank statement #6849 (12/8 -3/8/16) h) objection to Sch I and J expenses including gift monthly to family member for car, cafeteria, taxes (as amount withheld not incurred), charity (without evidence on taxes), and 2 vehicle loans - one person working,**

18.    On May 24, 2016, the Debtor filed her Chapter 13 Calculation of Your Disposable Income Form 122C-2 (ECF#70) ("Form 122C-2").  The income used on the Form 122C-2 is $8,038.75 and does not include the $314.00 per month the Debtor is allegedly receiving from the "Family Member Contribution to Car Drive by Family Member" listed on Amended Schedules I (ECF#65) Line 9.  If the Debtor listed the alleged income from her family member, the Debtor's monthly disposable income would be $570.92.

### The Plan Fails to Commit All of the Debtor's
### Projected Disposable Income

19.     Multibank objects to confirmation pursuant to 11 U.S.C. § 1325 (b)(1) as the statutes provide that a Chapter 13 plan cannot be confirmed unless it satisfies what is known as the "best interest of creditors test."  Section 1325(b) mandates that "debtors pay either 100 percent of the unsecured claims against the estate or use all of their disposable income to fund the plan." *In re Humphrey,* 165 B.R. 508, 510 (Bankr. M.D.Fla. 1994).  In relevant part, the statute states:

> (b)
>> (1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>>> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>>> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
>> (2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—
>>> (A)
>>>> (i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed;

20.     First, the Plan does not propose to pay unsecured creditors 100% of their claims.

21.     Second, the Debtor is not committing her full disposable income to fund the Plan. The Debtor's has additional non-exempt disposable income that is impermissibly being deducted from the Debtor's monthly income.

22.     The Debtor has several luxuries[1] listed on her removed from Amended Schedule J (ECF#65).  As detailed above, the Ch. 13 Trustee shares Multibank's concerns regarding the luxuries and requests that the Debtor increase her plan payments.

23.     In addition to above, not all of the "involuntary deductions" are in fact involuntary.  The Debtor's Schedule I (ECF#1) Line 5h states that the Debtor is making $489.36 per month to  her "403(b)" retirement plan.  Although there is a split of authority, the better reasoned case law holds that these voluntary contributions are not deductible from the Debtor's disposable income and must therefore be included in the calculation of "projected disposable income" available for the repayment of creditors.  *See In re Seafort*, 669 F.3d 662 (6th Cir. 2012) (holding that Chapter 13 debtors could not continue to make voluntary retirement contributions in the same amount as their 401(k) loan repayments after repayment of the loan); *In re Parks*, 475 B.R. 703 (9th Cir. BAP 2012) (holding that Chapter 13 debtors cannot make post-petition voluntary retirement contributions in any amount); *In re McCullers*, 451 B.R. 498 (Bankr. N.D. Cal. 2011) (same); and *In re Prigge*, 441 B.R. 667 (Bankr. D. Mont. 2010) (same); *but see Baxter v. Johnson (In re Johnson)*, 346 B.R. 256, 263 (Bankr. S.D. Ga. 2006); *In re Garrett*, 2008 WL 6049236 (Bankr. M.D. Fla.)

24.     If the Debtor included such non-exempt disposable income in her Plan, unsecured creditors would be paid in full with interest.

---

[1] Luxuries included on the Debtor's Schedule J (ECF#1) include, but are not limited to, $51.42 for the "Cafeteria," $143.00 per month for "Medical and dental expenses," and insurance payments and car payments for two (2) automobiles despite the fact that there is only one (1) driver in her home.

25.     Further, the Form 122C-2 does not list the Debtor's full income.  The income used on the Form 122C-2 is $8,038.75 and does not include the $314.00 per month the Debtor is allegedly receiving from the "Family Member Contribution to Car Drive by Family Member" listed on Amended Schedules I (ECF#65) Line 9.  If the Debtor listed the alleged income from her family member, the Debtor's monthly disposable income would be $570.92.

26.     Accordingly, the Plan fails to meet the confirmation standards of Section 1325, which includes § 1325(b)(1)(B)'s disposable income test and § 1325(a)(4)'s best interests of creditors test.

**The Plan Is Not Feasible**

27.     Under § 1325(a)(6) of the Bankruptcy Code, a plan cannot be confirmed unless "the debtor will be able to make all payments under the plan and comply with the plan." Multibank objects to the Amended Plan because the plan does not appear to be feasible.

28.     Both the Debtor's Amended Schedule J (ECF#65) and the Form 122C-2 do not list the private school tuition listed on the initial Schedule J (ECF#1).  Upon information and belief, the Debtor is still making the $1,066.67 payment.

29.     With this actual expense, the Debtor's monthly net income is **_negative_** and there is nothing to suggest that the Debtor will be able to make her Plan payments.  It is the Debtor's burden to demonstrate that the Plan is feasible pursuant to § 1325(a)(6).

30.     Accordingly, confirmation should be denied pursuant to § 1325(a)(6).

**The Plan Was Proposed In Bad Faith**

31.     Pursuant to 11 U.S.C. §§ 1325(a)(3) and (7), the filing of the Plan and bankruptcy petition was not done in good faith.  "In conducting the good faith inquiry, the totality of the circumstances    must    be    considered."    *In  re  Humphrey,*  165  B.R.  508,  510–11

(Bankr.M.D.Fla.1994). The Eleventh Circuit has approved a non-exclusive list of factors for determining good faith:

> 1. the amount of Debtor's income from all sources;
> 2. the living expenses of Debtor and his dependents;
> 3. the amount of attorney's fees;
> 4. the probable or expected duration of Debtor's chapter 13 plan
> 5. the motivations of Debtor and his sincerity in seeking relief under the provisions of chapter 13;
> 6. Debtor's degree of effort;
> 7. Debtor's ability to earn and the likelihood of fluctuation of his earnings;
> 8. special circumstances such as inordinate medical expense;
> 9. the frequency with which Debtor has sought bankruptcy protection;
> 10. the circumstances under which Debtor has contracted his debts and has demonstrated bona fides, or lack of same, in dealings with his creditors;
> 11. the burden which the plan's administration would place on the trustee;
> 12. any exceptional circumstances in the case;
> 13. the type of debt and whether it would be nondischargeable in chapter 7;
> 14. accuracy of the plan's statements of debts and expenses and whether any inaccuracies are an attempt to mislead the court....

Id. at 511 (quoting *In re Kitchens*, 702 F.2d 885, 888 (11th Cir.1983)).

32.    The Plan fails to meet the good faith requirements of 11 U.S.C. §1325.

33.    Factor (xiii) supports a finding of bad faith as the Debtor has failed to make a candid and full disclosure.  The Debtor has made misleading and inaccurate disclosures in her schedules, particularly that the "garnishment" listed on her Schedule I Line 5h (ECF#1).

34.    Factors (ii) and (v) support a finding of bad faith as the Debtor has made no effort to repay Multibank, instead filed bankruptcy immediately after the judgment was entered.

35.    The Debtor filed bankruptcy to avoid the pending collection action of Multibank, supporting a finding of bad faith based upon Factors (iii) and (iv). It is undisputed that the Multibank is the Debtor's largest unsecured creditor and Debtor filed bankruptcy shortly after

Multibank received a judgment against the Debtor. The Debtor filed bankruptcy to avoid the pending collection action of the Multibank's money judgment of $131,208.21, and the Debtor has made no assertion that any other significant creditor is attempting to collect from her. The other unsecured debts listed on the Debtor's schedules are credit card debts, all of which are small in relation to the Multibank's money judgment, and minimal non-dischargeable student loan debt. Multibank's unsecured debt is $131,208.21 of Debtor's $164,507.21 unsecured debt.

36.     All of the above factors demonstrate Debtor is retaining significant assets, which are indisputably luxuries including a rental property, daily lunches out at work, transportation in addition to their vehicles, without making any meaningful distribution to unsecured creditors cannot satisfy the good faith requirements of 11 U.S.C. §1325.

37.     The Debtor seeks to keep their luxuries while discharging their liability to Multibank, which appears to be her largest unsecured debt.

38.     The Debtor's income would significantly increase without such luxuries, and could pay creditors over $2,000.00 per month, thereby paying unsecured creditors in full of the life of the Plan.

## Conclusion

39.     Pursuant to 11 U.S.C. § 1307, Multibank requests that the Debtor's Chapter 13 case be dismissed. The Debtor has repeatedly failed to file a plan that is confirmable, and there is no reasonable possibility of reorganization in this case.

40.     The Debtor has ignored the requirements of a chapter 13 Plan, and appears to have filed this petition in bad faith in the hopes of stalling the post judgment remedies of Multibank, rather than having any actual intent to reorganize. Accordingly, Multibank requests that the Court sustain the objection to the Plan and dismiss the Debtor's bankruptcy case.

41.    The deficiencies in Debtor's Plan set forth in this objection are intended to be non-exhaustive.  Multibank  reserves the right to raise additional objections to the Plan at or prior to the confirmation hearing.

WHEREFORE, Multibank 2009-1 RES-ADC Venture, LLC requests the entry of an Order (1) denying confirmation of the Plan; (2) dismissing this Chapter 13 case; and (3) granting such other and further relief as is just and appropriate.

Dated:  May 31, 2016

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

JONES WALKER LLP
*Attorneys for Multibank 2009-1 RES-ADC Venture, LLC*
201 Biscayne Blvd., Suite 2600
Miami, Florida 33131
Email:  bturner@joneswalker.com
Telephone:  (305) 679-5700
Facsimile:  (305) 679-5710

By: __*/s/ Barry Turner*_____
        Barry S. Turner, Esq.
        Florida Bar No. 85535

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all parties receiving service via ECF, including those listed below, on May 31, 2016.

<u>ECF:</u>
- Diego Mendez    info@mendezlawoffices.com,
  ana.solano@mendezlawoffices.com;mlolawbestcase@gmail.com
- Nancy K. Neidich    e2c8f01@ch13herkert.com, ecf2@ch13herkert.com
- Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov
- Steven G. Powrozek    spowrozek@logs.com, electronicbankruptcynotices@logs.com
- Ariel Rodriguez    ariel.rodriguez@usdoj.gov
- Barry Seth Turner    bturner@joneswalker.com,
  mvelapoldi@joneswalker.com;tsnow@joneswalker.com

By: ___*/s/ Barry Turner*_____
Barry S. Turner, Esq.